## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**LESTER MATHIS,**

       Plaintiff,

**v.**                           **Case No. 3:12-cv-735-J-99MMH-TEM**

**DAVID ADAMS, et al.,**

       Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants **Adams** and **Carey**, by and through undersigned counsel and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby file this motion for summary judgment and in support state:   (1) Plaintiff cannot show a violation of the Eighth Amendment; (2) The Defendants are entitled to qualified immunity; (3) Any State law claims are subject to dismissal; and (4) Plaintiff has repeatedly lied to this Court and the case should be dismissed as a sanction.

## PRELIMINARY STATEMENT

At the times relevant in the Complaint [Doc. 1], Plaintiff Lester Mathis ("Mathis" or "Plaintiff") was and is a state prisoner in the custody of the Florida Department of Corrections ("Department" or "FDOC").  (Def. Ex. A.)  The events alleged in the Complaint occurred on January 7, 2012, at Florida State Prison ("FSP") in Raiford, Florida, where Plaintiff was incarcerated as a prisoner and where the Defendants were employed with the FDOC.  [Doc. 1, pg. 7.]

Plaintiff alleges that Defendants Carey and Adams, as employees of the FDOC, violated his constitutional rights, along with committing the state law torts of assault and battery, by maliciously and sadistically using excessive against him with the intent to cause great bodily

1

harm.  [Doc. 1, pp. 11-13.]  As relief, Plaintiff seeks either $100,000.00 or $150,000.00 against each Defendant, federal and state indictments against each Defendant, and Plaintiff's court costs, fees, medical treatment costs, and attorney fees.  [Doc. 1, pp. 11-12.]

## PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges the following in the Complaint [Doc. 1]:

1.      On January 7, 2012, Plaintiff was housed on M-Wing at FSP.  [Doc. 1, pg. 7.]

2.      Plaintiff alleges that on January 7, 2012, Defendants Carey and Adams were conducting shower procedures at around 5:00 P.M. to 6:30 P.M. on M-Wing.  [Doc. 1, pp. 7-8.]

3.      Plaintiff alleges that Defendant Adams removed Plaintiff's handcuffs prior to placing him in the shower in contravention of the established shower procedure at FSP.  Plaintiff alleges that Defendant Carey "looked on."  [Doc. 1, pg. 8.]

4.      Plaintiff alleges that the Defendants falsified paperwork to demonstrate that Plaintiff tampered with a security device.  [Doc. 1, pg. 8.]

5.      Plaintiff alleges that Defendant Adams hit him in the face with a closed fist.  [Doc. 1, pg. 9.]

6.      Plaintiff alleges that Defendant Carey then began punching Plaintiff and "then he picked [Plaintiff] up and throwed [sic] [Plaintiff] into the shower . . ." [Doc. 1, pg. 9.]  Plaintiff further alleges that he was pinned inside the shower while he was beaten, kicked in the face, hit in the face with handcuffs, and stabbed in the face with keys.  Id.

7.      Plaintiff alleges that the use of force lasted a **minimum** of thirty (30) minutes.  [Doc. 1, pg. 9.]

8.      Plaintiff alleges that Defendant Carey then stated, "Let's spray his nigger ass!"  [Doc. 1, pg. 9.]

9.      Plaintiff alleges that, at that point, Adams stuck a can of chemical agents inside of

2

Plaintiff's ear and sprayed it.  [Doc. 1, pg. 9.]

10.    Plaintiff alleges that upon being removed from the shower, he was "covered from head to toe in a pool of blood."  [Doc. 1, pg. 9.]

## DEFENDANTS' STATEMENT OF RULE 56(e) MATERIAL AND GENUINE FACTS

11.    On January 7, 2012, at approximately 5:50 P.M. Defendant Carey was assigned as M-Wing Housing Sergeant.  (Def. Ex. B; D.)  At the same time, Defendant Adams was assigned as M-Wing Housing Officer.  (Def. Ex. C-D.)  Both Defendants were conducting shower procedures on the third floor of M-Wing when Plaintiff, was being placed in the first shower stall.  (Def. Exs. B-F; H[1].)

12.    At that time, Plaintiff manipulated his restraint device, freeing his right hand, turned and struck Defendant Adams with a closed fist in the left side of his chin.  (Def. Exs. B-G.)

13.    At that point Defendant Carey felt that it was necessary for him to attempt to physically restrain Plaintiff.  (Def. Ex. B.)  Defendant Carey's decision to use force was in compliance with the Department's rules regarding the use of non-deadly force found in Fla. Admin. Code R. 33-602.210(2).

14.    Defendant Carey then grasped Plaintiff around the upper torso area and pushed him away from Defendant Adams, stopping the battery on Defendant Adams.  (Def. Exs. B-D.)

15.    Defendant Carey ordered Plaintiff to cease his actions, which Plaintiff refused while continuing to resist.  Plaintiff turned, faced Defendant Carey, and began striking him in the

---

[1] Exhibits H and I are digital video discs (DVD) from two security cameras fixed on M-Wing at FSP and a handheld digital camera and has been intentionally omitted as an exhibit from this motion.  These DVDs show the internal structure of the prison facility, and such information being available to the general public presents a severe safety and security risk. Contemporaneous with the filing of this motion, Defendants have filed a Motion for Leave to file Exhibits under Seal.  Defendants will transmit Exhibits H and I to the Clerk upon the granting of Defendants' Motion for Leave to file Exhibit under Seal.

face and upper torso with closed fists.  (Def. Exs. B-D; G.)

16.     Defendant Carey turned Plaintiff away from him and placed Plaintiff against the shower wall with his right hand on Plaintiff's upper back and his left hand on the back of Plaintiff's head and held Plaintiff securely against the wall.  (Def. Exs. B; D.)

17.     At that time, Plaintiff began attempting to kick and elbow Defendant Carey.  (Def. Exs. B; D.)  Defendant Carey then forced Plaintiff face down to the shower floor.  (Def. Exs. B; D.)

18.     Defendant Carey ordered Plaintiff to cease his resisting and to place his hands behind his back.  (Def. Exs. B; D.)  Plaintiff refused to comply and continued to resist. (Def. Exs. B; D.)

19.     Defendant Adams then radioed for backup and broke the seal on his MK4 chemical agents canister.  (Def. Exs. B-D.)  Defendant Adams then administered three (3) one (1) second bursts of chemical agents on Plaintiff, striking him in the upper torso area.  (Def. Exs. B-D.)   When utilizing chemical agents to Plaintiff, Defendant Carey was also struck with chemical agents in the upper torso.  (Def. Exs. B-D.)

20.     Plaintiff remained defiant and attempted to get to his feet while Defendant Carey maintained his grasp on Plaintiff.  (Def. Exs. B-D.)

21.     Upon the arrival of Captain Rizer, Sergeant Warner, Officer Young, and Officer Hodges, who had been sent after Defendant Adams radioed for backup and with their assistance, Plaintiff was restrained, after which all force by Defendants ceased.  (Def. Exs. B-D.)

22.     At this point, per Department policy, Defendant Carey and Defendant Adams were no longer in contact with Plaintiff.  (Def. Ex. I.)

23.     The entire incident lasted approximately five (5) minutes.  (Def. Exs. D; H-I.)

24.     The Defendants were in the shower area with Plaintiff for approximately one (1)

minute prior to Defendant Adams exiting due to the altercation and calling additional staff.  (Def. Exs. D-I.)

25.     After the incident, Defendant Carey received a post use of force physical and it was determined that Defendant Carey sustained the following injuries:  a small amount of swelling and redness under both his right and left eye.  These injuries were the result of Plaintiff's actions.  (Def. Exs. B; D.)

26.     Consistent with the type of force required to use in self-defense, when Plaintiff was examined in medical after the incident the following injuries were noted:  an abrasion to his forehead, some slight swelling in the cheek area, a couple of lacerations, some bruising and redness.  (Def. Ex. D.)

27.     After being transferred to the outside hospital, Plaintiff was also determined to have an age interminable fracture to the tip of his nose.  [Doc. 1, pg. 30.]

28.     At the time, Defendant Adams was certified in the use of chemical agents with his certification expiring in September 2012.  (Def. Ex. D.)  Defendant Adams' MK4 OC streamer canister had a beginning and ending weight of 120 grams and 75 grams, respectively, resulting in 45 grams being used.  (Def. Ex. D.)

29.     After the incident on January 7, 2012, Defendant Adams wrote a disciplinary report ("DR") against Plaintiff charging him with battery on a correctional officer, a violation of Rule 33-601.314 (1-15), Florida Administrative Code, given DR log # 205-120040.  (Def. Ex. E.)  The pertinent facts are that, while being placed in the shower, Plaintiff manipulated his hand restraints and turned and struck Defendant Adams with a closed fist.  (Id.)  During the DR investigation, Plaintiff was given a copy of the DR, and was provided an opportunity to provide a witness statement and to request witnesses and evidence.  (Id.)  Plaintiff refused to be present during his disciplinary hearing even though he was given the opportunity to attend.  (Id.)  On

5

March 23, 2012, the DR hearing team found him guilty based the eyewitness testimony of Defendant Adams, sanctioning him with 60 days of disciplinary confinement.  (Id.)

30.     After the incident on January 7, 2012, Defendant Adams wrote a DR against Plaintiff charging him with tampering with a security device, a violation of Rule 33-601.314 (9-33), Florida Administrative Code, given DR log # 205-120041.  (Def. Ex. F.)  The pertinent facts are that, while being placed in the shower, Plaintiff manipulated his hand restraints and removed his right hand from the restraints to commit a battery on staff.  (Id.)  During the DR investigation, Plaintiff was given a copy of the DR, and was provided an opportunity to provide a witness statement and to request witnesses and evidence.  (Id.)  Plaintiff refused to be present during his disciplinary hearing even though he was given the opportunity to attend.  (Id.)  On March 23, 2012, the DR hearing team found him guilty based the eyewitness testimony of Defendant Adams, sanctioning him with 60 days of disciplinary confinement.  (Id.)

31.     After the incident on January 7, 2012, Defendant Carey wrote a DR against Plaintiff charging him with battery on a correctional officer, a violation of Rule 33-601.314 (1-15), Florida Administrative Code, given DR log # 205-120042.  (Def. Ex. G.)  The pertinent facts are that, while being placed in the shower, Plaintiff manipulated his hand restraints and turned and struck Defendant Adams with a closed fist.  (Id.)  Defendant Carey ordered Plaintiff to cease his actions, to no avail.  Plaintiff then began striking Defendant Carey with both fists.  (Id.)  During the DR investigation, Plaintiff was given a copy of the DR, and was provided an opportunity to provide a witness statement and to request witnesses and evidence.  (Id.)  Plaintiff refused to be present during his disciplinary hearing even though he was given the opportunity to attend.  (Id.)  On March 23, 2012, the DR hearing team found him guilty based the eyewitness testimony of Defendant Carey, sanctioning him with 60 days of disciplinary confinement.  (Id.)

32.     The use of force report, case no. 2012-205-005, was reviewed by the Warden for

compliance with FDOC rules and procedures on January 16, 2012.  (Def. Ex. D, pp. 12-13.)  The institutional inspector at FSP then reviewed and forwarded the packet to the Office of the Inspector General's ("IG") Use of Force unit for final review and approval.  (Def. Ex. D, pg. 12.)  The IG's Use of Force unit reviewed the use of force packet for compliance with FDOC rules and procedures, and approved the use of force involving Defendants Carey and Adams.  (Def. Ex. D, pg. 12.)

**MEMORANDUM OF LAW AND ARGUMENT**

**I.  Standard for summary judgment.**

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).   The party moving for summary judgment bears the initial burden of demonstrating an absence of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 322-23.  Upon meeting this burden, the burden shifts to the nonmoving party to present evidentiary material in opposition to the motion for summary judgment, demonstrating that a genuine issue of material fact exists.  See id.  In order to meet this burden, the nonmoving party must make "a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial," id. at 322, where all reasonable inferences, *not implausible inferences*, are made in that party's favor, Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002).  As stated by the Supreme Court, "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007).

Applicable substantive law identifies those facts that are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Factual issues must have a real basis in the record to be considered genuine, and the nonmoving party must show more than a "metaphysical doubt" regarding the material facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

A 'scintilla' of evidence or conclusory allegations are insufficient to create a material dispute of fact. Celotex Corp, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (there is no genuine issue for trial if the record taken as a whole would not lead a rational trier of fact to find in favor of non-moving party). The nonmoving party's evidentiary material must consist of more than their self-serving, uncorroborated, or conclusory affidavit or sworn statement to create an issue of fact for trial. Muhammad v. Sapp, 494 F. App'x 953, 957-958 (11th Cir. Nov. 1, 2012) (citing Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006), in holding that an affidavit alone is considered a "scintilla" of evidence and is insufficient); Solliday v. Federal Officers, 413 F. App'x 206, 207 (11th Cir. 2011) (unreported op.) ("Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."); Vicks v. Knight, 380 F. App'x 847, 852 (11th Cir. 2010) (unreported op.); West v. Higgins, 346 F. App'x 423, 425 (11th Cir. 2009) (unreported op.) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991).

Hearsay statements contained in an affidavit will not defeat a motion for summary

judgment.  See Bozeman v. Orum, 422 F.3d 1265, 1267 n.1, n. 2 (11th Cir. 2005) (the court

cannot consider hearsay "in discerning the facts for summary judgment" purposes); Fed. R. Civ.

P. 56(e) ("supporting and opposing affidavits shall be made on personal knowledge, shall set

forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant

is competent to testify to the matters stated therein.").

The Eleventh Circuit has noted that some courts, including the Eleventh Circuit, have

"restated the general rule to hold that a district court may consider a hearsay statement in

passing on a motion for summary judgment if the statement could be "reduced to admissible

evidence at trial" or "reduced to admissible form".  See Macuba v. DeBoer, 193 F.3d 1316,

1323 (11th Cir. 1999).  These phrases have developed from language appearing in the Supreme

Court's decision in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986).  Id.  However, when courts use such phrases "reduced to admissible evidence at trial"

and "reduced to admissible form", they mean that the out-of-court statement made to the

witness – i.e., the Rule 56(c) affiant or the deposition deponent – must be admissible at trial for

some purpose.  Id.  "For example, the statement might be admissible because it falls within an

exception to the hearsay rule, [note omitted] or does not constitute hearsay at all (because it is

not offered to prove the truth of the matter asserted), [note omitted] or is used solely for

impeachment purposes (and not as substantive evidence)."  Macuba at 1323-1324.

In McMillian v. Johnson, 88 F.3d 1573, 1584 (11th Cir. 1996), the Eleventh Circuit

clarified its earlier rulings on this point by indicating that their cases applying Celotex read

Celotex "as simply allowing *otherwise admissible evidence* to be submitted in inadmissible

form at the summary judgment stage, though at trial it must be submitted in admissible form."

However, the court was clear that "potential impeachment evidence [although admissible] . . .

may not be used to create a genuine issue of material fact for trial" that would defeat a motion

for summary judgment.  McMillian, 88 F.3d at 1584.

## II.   Plaintiff fails to establish an Eighth Amendment Violation.

### A. The evidence demonstrates that Plaintiff fails to establish an Eighth Amendment Violation.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)) (internal quotation omitted).  The evidence required to establish an unnecessary and wanton infliction of pain varies according to the nature of the alleged violation.  Whitley, 475 U.S. at 320.  To prove a violation of the Eighth Amendment, a prisoner must show that the alleged deprivation was objectively sufficiently serious to be of constitutional concern, and that the prison official acted with a sufficiently culpable state of mind by knowing of and disregarding an excessive risk to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994).

In Whitley, the principal question before the Supreme Court was what legal standard should govern the Eighth Amendment claim of an inmate shot by a guard during a prison riot. The Supreme Court based its answer on the settled rule that "'the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"  Whitley, 475 U.S. at 319 (quoting Ingraham, 430 U.S. at 670) (internal quotation omitted).

When "[prison] officials [are] confronted with a prison disturbance [they] must balance the threat the unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force.  Despite the weight of these competing concerns, corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'"  Id. at 320.  The Court accordingly concluded in Whitley that

application of the deliberate indifference standard is inappropriate when authorities use force to put down a prison disturbance.   Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"   Id., at 320-321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (CA2), cert. denied sub nom. John v. Johnson, 414 U.S. 1033 (1973)).

The Supreme Court has recognized the difficulties in balancing interests when prison officials are called upon to restore order in the face of a riot or disturbance:

> Many of the concerns underlying our holding in Whitley arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"  475 U.S., at 321-322, 106 S.Ct., at 1085 (quoting Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).  In recognition of these similarities, we hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999-1000 (1992).  In excessive force claims, the main inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm."  Kornagay v. Burt, No. 3:09cv281/LAC/EMT, 2011 WL 839496, at *10 (N.D. Fla. Feb. 8, 2011) (unreported op.) (quoting Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1178-79 (2010).  Compliance with prison regulations in administering force or restraint provides evidence that prison officials acted in good faith and not to inflict pain.  Campbell v. Sikes, 169 F.3d 1353, 1376 (11th Cir. 1999).

Plaintiff claims that Defendants Adams and Carey removed his handcuffs and began

11

assaulting him.  [Doc. 1.]  Plaintiff alleges that the actions were done with malicious and sadistic intent.  [Doc. 1, pg. 13.]  There is no dispute that force was used on Plaintiff; however, the force became necessary after Plaintiff manipulated his hand restraints and assaulted both officers. (Def. Exs. B-G.)

The record evidence reveals that on January 7, 2012, at approximately 5:50 P.M., Defendant Carey and Defendant Adams were conducting shower procedures and were escorting Plaintiff to the shower.  (Def. Exs. B-F; H.)  At that time, Plaintiff manipulated his restraint device, freeing his right hand, turned and struck Defendant Adams with a closed fist in the left side of his chin.  (Def. Exs. B-G.)  It then became necessary for Defendant Carey to attempt to restrain Plaintiff.  (Def. Ex. B.)

Defendant Carey then grasped Plaintiff around the upper torso area and pushed him away from Defendant Adams, stopping the battery on Defendant Adams.  (Def. Exs. B-D.)  Defendant Carey ordered Plaintiff to cease his actions, which Plaintiff refused while continuing to resist. Plaintiff turned, faced Defendant Carey, and began striking him in the face and upper torso with closed fists.  (Def. Exs. B-D; G.)  Defendant Carey turned Plaintiff away from him and placed Plaintiff against the shower wall with his right hand on Plaintiff's upper back and his left hand on the back of Plaintiff's head and held Plaintiff securely against the wall.  (Def. Exs. B; D.)  At that time, Plaintiff began attempting to kick and elbow Defendant Carey.  (Id.)  Defendant Carey then forced Plaintiff face down to the shower floor.  (Id.)  Defendant Carey ordered Plaintiff to cease his resisting and to place his hands behind his back.  (Id.)  Plaintiff refused to comply and continued to resist. (Id.)

Approximately one minute after entering the shower area, Defendant Adams radioed for backup and broke the seal on his MK4 chemical agents canister.  (Def. Exs. B-I.)  Defendant Adams then administered three (3) one (1) second bursts of chemical agents on Plaintiff, striking

him in the upper torso area.  (Def. Exs. B-D.)  When utilizing chemical agents to Plaintiff, Defendant Carey was also struck with chemical agents in the upper torso.  (Id.)  Plaintiff remained defiant and attempted to get to his feet while Defendant Carey maintained his grasp on Plaintiff.  (Id.)  Upon the arrival of Captain Rizer, Sergeant Warner, Officer Young, and Officer Hodges, who had been sent after Defendant Adams radioed for backup and with their assistance, Plaintiff was restrained, after which all force by Defendants ceased.  (Id.)  After the incident, Defendant Carey received a post use of force physical and it was determined that Defendant Carey sustained the following injuries:  a small amount of swelling and redness under both his right and left eye.  These injuries were the result of Plaintiff's actions.  (Def. Exs. B; D.)

An excessive force claim is contextual and requires that many factors be considered:  (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them."  Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing to Hudson v. McMillian, 503 U.S. at 7 (internal citations omitted).). An application of force was necessary in this case to prevent Plaintiff from further assaulting correctional staff and possibly escaping from the shower area.  (Def. Exs. B-G.)  "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."  Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990).  See also Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir.2008) (overruled in part on other grounds[2]) ("If there were nothing before us but the initial use of pepper spray following Danley's second failure to obey Allyn's order to return to the cell, we would readily conclude

---

[2] See Randall v. Scott, 610 F.3d 701, 709 (11th Cir.2010) (stating that "we agree with [plaintiff] Randall that those cases [Danley] were effectively overturned by the Iqbal Court").  See also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

that there was no Fourteenth Amendment violation."). Pepper spray is an accepted non-lethal means of controlling unruly inmates. See Danley at 1307. See also Jones v. Shields, 207 F.3d 491, 496 (8th Cir.2000) (citing cases); cf. Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir.2002). An inmate striking a correctional officer in the face with a closed fist is reasonably perceived as a threat under any objective examination. Plaintiff's actions posed a serious threat to the security of the institution as he was able to manipulate his restraints and free himself. Plaintiff was housed at Florida State Prison, a close management institution that houses inmates with a history of past behavioral problems. Having an inmate that has just assaulted a correctional officer and is unrestrained in the wing poses a threat to the other officers on the wing as well as any other inmates that were out of their cells for shower procedures on the other floors of the wing.

In response to this threat, only the minimal amount of force necessary to gain control of Plaintiff was applied, in a good-faith effort to restore order. (Def. Exs. B-G.) Defendant Carey only attempted to physically restrain Plaintiff after Plaintiff struck Defendant Adams in the face. When those efforts failed, it became necessary for Defendant Adams to utilize chemical agents to attempt to restore order. Plaintiff's alternative account of the incident is just not plausible. It does not make sense that the Defendants would plan a premeditated attack on Plaintiff in the shower area while another inmate was present. [Doc. 1.] It does not make sense that the Defendants would conspire to intentionally beat Plaintiff and then, within one minute of entering the shower, radio for back up. That simply does not make sense and no reasonable jury could possibly believe that the Defendants wanted to sadistically and maliciously beat Plaintiff so badly that they planned an attack that took place under those circumstances. Furthermore, Plaintiff's claim fails as the evidence shows that the use of force was proper in accordance with Fla. Admin. Code R. 33-602.210(2).

14

Accordingly, because the record evidence is consistent with a lawful use of force applied in a good faith effort to restore order, Plaintiff cannot demonstrate an excessive use of force and Defendants are entitled to summary judgment in their favor.

**B.  To the extent Plaintiff alleges a different version of the incident, Plaintiff's claims are impermissible as they would necessarily invalidate valid prison DRs.**

Further, pursuant to O'Bryant v. Finch, 637 F.3d 1207, 1215-1216 (11th Cir. 2011), Plaintiff is foreclosed from disputing his behavior as described in the DRs.  As stated by the Eleventh Circuit, when a prisoner has been afforded due process during the disciplinary hearing and found guilty for violating prison rules, it is not due to some malicious or sadistic motives because "[t]o find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction." Id. at 1215-16.  "Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." Id. at 1215.  In this case, Plaintiff has been found guilty of three different DRs arising out of this action.  (Def. Exs. E-G.)  Those DRs outline specific step-by-step details that Plaintiff cannot directly or indirectly dispute.  First, Plaintiff manipulated his hand restraints, freeing his hand.  (Def. Ex. F.)  Then, Plaintiff struck Defendant Adams in the jaw, which compounded the need for the use of force.  (Def. Ex. E.)  Finally, after Defendant Carey ordered Plaintiff to cease his disruptive behavior and pushed Plaintiff away from battering Defendant Adams, Plaintiff began to strike Defendant Carey with both his fists. (Def. Ex. G.)  Plaintiff received due process in each of these DRs and all of them remain on his disciplinary record.  (Def. Exs. E-G.)  As such, in accordance with O'Bryant, Plaintiff cannot dispute the facts as stated in the DRs, cannot deny the conduct in the DRs, cannot imply that the DRs are false, and cannot survive summary judgment.  To find that the events did not occur in

this way would undermine these DRs and would, necessarily, invalidate them and the decision of guilt by the disciplinary panel in contravention of O'Bryant.   Therefore, the Defendants are entitled to a grant of summary judgment.

## III.   The Defendants are entitled to qualified immunity.

"The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation." GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998).   Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct "violates 'clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" Id.  (alteration in original) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   The Supreme Court has established a two-part test for determining whether an officer is entitled to qualified immunity.  The court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citation omitted).   The court must also determine whether the constitutional violation was clearly established.  Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).   However, the district court has discretion to determine in what order to address each part.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In order to show that the constitutional violation was clearly established, plaintiffs must demonstrate (1) "that a materially similar case has already been decided, giving notice to the [correctional staff];" (2) "that a broader, clearly established principle should control the novel facts in this situation;" or (3) "this case fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir.2005) (citations omitted).   The Plaintiff "must point to law as

interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" to show that the constitutional violation was clearly established.  Id.

Initially, under Florida law a correctional officer is entitled to apply physical force upon an inmate when and to the extent that it reasonably appears necessary to defend himself against use of unlawful force.  See § 944.35(1)(a)(1), Fla. Stat. (2012); see also Fla. Admin. Code R. 33-602.210(2).  Therefore, Florida law explicitly authorized Defendants Carey and Adams to apply force reasonably necessary to defend themselves from Plaintiff's attack.

Further, it does not appear that there are any cases with materially similar facts that would give a reasonable correctional officer fair and clear warning that Defendant Carey attempting to restrain Plaintiff after Plaintiff hit a fellow correctional officer in the face would violate the Constitution.  Likewise, there is nothing that would give a reasonable correctional officer fair and clear warning that Defendant Adams using chemical agents to stop the attack on a fellow officer trying to restrain him would violate the Constitution.

Finally, although not directly on point, cases have held that force is not excessive when officers are faced with situations where self-defense or defense of others is necessary.  In Carr v. Tatangelo, 338 F. 3d 1259 (11th Cir. 2003), the Eleventh Circuit held that a police officer was entitled to qualified immunity where he shot a suspect based upon his belief that the suspect was about to use deadly force on a fellow officer.  Similarly, in Kessinger v. Herrington, 381 F. 3d 1243 (11th Cir. 2004), the Eleventh Circuit held that a sheriff's deputy was entitled to qualified immunity for an incident where he shot a man who he believed was firing a weapon at him.  While these cases involve use of force incidents where deadly force was applied by officers in a Fourth Amendment arrest context, it stands to reason that the same standard should apply to incidents where non-deadly force is applied by correctional officers in an Eighth Amendment prisoner context.  See Redd v. Conway, 160 Fed. App'x 858 (11th Cir. 2005) (Upholding a grant

17

of summary judgment against pretrial detainee where "the amount of force required to restrain Redd was equal to the need for force based on Redd's belligerent and violent behavior," citing Carr, 338 F. 3d at 1273).

Accordingly, Defendants assert they are entitled to qualified immunity. Plaintiff has failed to allege and demonstrate by appropriate Rule 56(e) evidence that a constitutional violation under the Eighth Amendment has occurred as to any Defendant. Moreover, Plaintiff has not pointed to any clearly established law that would indicate the actions of any of Defendants violated his constitutional rights and deprive Defendants of qualified immunity for their actions.

**IV.    Plaintiff's state law claims are subject to dismissal.**

In this § 1983, Plaintiff Mathis alleges that Defendants Adams' and Carey's use of physical force against him without need or provocation constituted the torts of assault and battery under the laws of the State of Florida. [Doc. 1, pp. 11-13.] Because Plaintiff cannot establish any constitutional violation, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law tort claims. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966). Such dismissal is encouraged where the federal claim is dismissed. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004) (citing L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)). Furthermore, a private person also has no standing to request any criminal prosecution. See Otero v. United States Attorney Gen., 832 F.2d 141 (11th Cir. 1987). Still, to the extent, Plaintiff is raising state law claims, such claims are subject to dismissal.

**V.    Plaintiff's case should be dismissed due to his lack of candor.**

As Defendants set forth in its Motion for Sanctions [Doc. 76], which is presently pending before this Court, Plaintiff has repeatedly submitted false and misleading information to this

Court and his case should be dismissed as a sanction pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and/or Federal Rule of Civil Procedure 41(b).  Plaintiff filed a Motion to Delay Actions [Doc. 25] and a Motion to Appoint Counsel [Doc. 26] wherein he alleged that he was in a "semi zombified state of mind on the new medications."  [Doc. 26.]  Plaintiff also stated that he is constantly in a "drug induced state" [Doc. 25], suffers from blurred vision, memory loss, and diminished hearing as a result of the alleged actions of Defendants.  [Doc. 26.]  Plaintiff further alleged he suffers depression as a result of the alleged incident and has been put on medication as a result.  Id.    Plaintiff made all of these statements to persuade the Court to appoint him counsel.

In response, Plaintiff filed a "Motion for Clarification" attempting to justify the remarks he made for the purpose of having counsel appointed.  Plaintiff alleged that he was persuaded by other inmates to file his motions and that Plaintiff, himself, was unable to formulate a motion on his own.  [Doc. 30.]  Plaintiff attempted to justify his request for discovery from Defendants while simultaneously refusing to provide discovery as "peer pressure."  [Doc. 30.]  Plaintiff made these statements in another attempt to persuade the Court to appoint him counsel.  [Doc. 30.]

Plaintiff later filed a Motion to Compel.  [Doc. 57.]  In that motion, Plaintiff made numerous false statements including a claim that Defendants' responses to his interrogatories were evasive.  Id.  However, at that time, Plaintiff had not yet received those interrogatory answers, as they were not due until May 8, 2013, and Plaintiff filed the motion on May 6, 2013.  Id.  Furthermore, Plaintiff has since argued to the Court that as of June 5, 2013, he still had not received the interrogatories.  [Doc. 74.]  If that were the case, then Plaintiff clearly would not know whether the answers were evasive and certainly could not have brought it to the attention of the Court.  Plaintiff also alleged that he had conferred with undersigned counsel regarding the

interrogatories.  [Doc. 57.]  Defendants have responded in opposition to that motion, attached all of the correspondence between the two parties, and demonstrated, through irrefutable evidence, that Plaintiff had lied to the Court.  [Docs. 58-59.]

Plaintiff then filed replies to Defendants' response in opposition.  [Docs. 62, 65.] Plaintiff stated in one of his replies that he had not received the interrogatories, demonstrating that his statements in the original Motion to Compel regarding the responses being evasive, etc. were false.  [Doc. 62.]  Plaintiff again stated that he had been unable to see a law clerk for an extended period of time.  Id.  In the second reply, Plaintiff again, in spite of the evidence to the contrary, stated that he had attempted to confer with undersigned counsel regarding discovery. [Doc. 65.]  There is no explanation as to why Plaintiff would state this again, in spite of evidence that he failed to do so, except that Plaintiff wanted to "double down" on his previous lie. Defendants again demonstrated to the Court the false statements set forth by Plaintiff.  [Doc. 66.]

Plaintiff then filed another Motion to Appoint Counsel that contained false statements. [Doc. 68.]  Plaintiff, in this motion, reiterated the claims he had made in his previous Motion to Compel [Doc. 57] that he had not been able to see a law clerk for an extended period of time. [Doc. 68.]  This document was written on a form obtained from the Union Correctional Institution Law Library, which Plaintiff has since admitted.  [Docs. 68, 73.]  Defendants have demonstrated that Plaintiff again attempted to mislead the Court in an effort to have counsel appointed.  [Doc. 69.]

Plaintiff has also demonstrated his lack of veracity regarding one of his claims throughout this case.  Plaintiff has repeatedly stated that he was transferred to Union Correctional Institution in an effort to "cover up" the incident.  [See e.g. Docs. 1, 63.]  However, Plaintiff has since stated that he was transferred to Union Correctional Institution in order to deal with depression.  [Doc. 74.]  At one point, Plaintiff alleges bad faith [See e.g. Docs. 1, 63] and

then states that the transfer was and is justified.  [Doc. 74.]

Defendants deposed Plaintiff on May 13, 2013.   During that deposition, undersigned counsel questioned Plaintiff regarding his medications.  Based on Plaintiff's answers, it is clear that Plaintiff lied to this Court regarding the extent of the side effects of his medication.  [Doc. 76.]  Plaintiff did so in order to have counsel appointed.  However, Plaintiff later stated that he suffers no side effects from his medication and has been taking the prescriptions during the entire course of the litigation. [Doc. 76.]  In fact, Plaintiff has been taking some of the medications for years.  Plaintiff later admitted this in a filing with the Court.  [Doc. 73.]  Therefore, it is clear that Plaintiff intentionally misled this Court as to the severity of his side effects in order to try to trick the Court into appointing counsel.

Furthermore, Plaintiff's claims that he has not been able to receive assistance from the law library are demonstrably false.   Defendants have demonstrated this in previous filings. Defendants have also received the law library log from Union Correctional Institution demonstrating the numerous times Plaintiff received assistance from the law library during the time frame he alleges he was unable to do so.  [Doc. 76-3]  Plaintiff has even implicitly admitted to this Court that his claims regarding the law library are false.  [Doc. 73.]  Plaintiff admitted that his Motion to Appoint Counsel [Doc. 68] was written on a form obtained from the Union Correctional Institution law library after he received advice that he needed counsel.  [Doc. 73.] In that Motion to Appoint Counsel, Plaintiff stated he was unable to access the law library. [Doc. 68.]  Therefore, Plaintiff's own statements to the Court reflect his lack of candor.

The evidence is overwhelming of Plaintiff's lack of candor to this tribunal.   Plaintiff should be sanctioned for submitting this false and misleading information to this Court.  A court may exercise its inherent power to punish bad faith conduct.  Chambers v. NASCO, Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 2133 (1991).  "In this regard, if a court finds 'that fraud has been

practiced upon it, or that the very temple of justice has been defiled,' "the court may impose sanctions against the responsible party. Id. (quoting Universal Oil Prods. Co. v. Root Ref. Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179 (1946)).  A party commits a fraud on the court when the falsehood mires the "judicial machinery" such that it "cannot perform in the usual manner its impartial task of adjudging cases . . ." Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir.1985).  Because sanctions are measured against objective standards of conduct, "objectively reckless conduct is enough to warrant sanctions even if the [party] does not act knowingly and malevolently." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1241 (11th Cir. 2007); In re Ocon, 2009 WL 405370 *1 (11th Cir. 2009).  As recognized by other courts:

> The court has the authority to control and manage matters such as this pending before it, and plaintiff's *pro se* status does not excuse him from conforming to acceptable standards in approaching the court.  If the court cannot rely on the statements or responses made by the parties, it threatens the quality of justice. The court will not tolerate false responses or statements in any pleading or motion filed before it.  Here, plaintiff falsely responded to a question on the complaint form, as detailed above. Plaintiff knew, from reading the complaint form, that disclosure of all prior actions was required and that dismissal of this action may result from his untruthful answers.  **If plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form.  Therefore, this court should not allow plaintiff's false responses to go unpunished.**  The undersigned recommends that an appropriate sanction for plaintiff's abuse of the judicial process in not providing the court with true and complete responses is to dismiss this cause without prejudice.  Plaintiff should also be warned that such false responses, filed herein or filed in the future, will not be ignored and may result in more severe and long-term sanctions.  See, e.g., United States v. Roberts, 308 F.3d 1147 (11th Cir.2002) (inmate convicted of perjury for false statement made on pleading filed in federal court).

Paulcin v. McNeil, 2009 WL 2432684, at *3 (N.D. Fla. 2009) (emphasis added); see also Sills v. Marion County Jail, 2010 WL 2367237, at *3 (M.D. Fla. 2010)(finding that the plaintiff's "failure to provide truthful responses on the complaint is an abuse of judicial process" and then dismissing the complaint because "[t]he Court refuses to tolerate false responses or incomplete statements in any pleading or motion filed for consideration by the Court").

A court can dismiss a case as frivolous or malicious under the Prison Litigation Reform Act (PLRA). 28 U.S.C. § 1915(e)(2)(B)(i).  In addition to dismissal under the PLRA, pursuant to Federal Rule of Civil Procedure 41(b), a court has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation. Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985).  The Eleventh Circuit recognizes that dismissal is an appropriate sanction for intentionally misleading the court.  See Mathews v. Moss, Slip Copy, 2013 WL 462392 (11th Cir. 2013)(affirming dismissal of a prisoner's Eighth Amendment claim against an officer due to the plaintiff's submission of fraudulent affidavits). In affirming the sanction of dismissal imposed against a state prisoner for filing and litigating a complaint under a false name, the Eleventh Circuit noted that a "trial is not a masquerade party nor is it a game of judicial hide-n-seek . . ." Zocaras v. Castro, 465 F.3d 479 (11th Cir. 2006).

This Court has recently stated that it "will not tolerate false statements in any pleading filed for consideration by the Court." Spiker v. Rodriguez, 3:11-cv-1156-TJC-JBT (M.D. Fla. April 3, 2012).  Plaintiff's conduct in submitting demonstrably false and misleading information to this Court should not be taken lightly.  Litigation is a serious matter, and the judicial system that assures the parties to a lawsuit receive their day in court is to be respected.   While Defendants understand that the Court has multiple options available in determining the most appropriate sanctions, Defendants suggest that Plaintiff is an inmate who is not set to be released until 2031 and will be unhindered by any sanctions involving prison disciplinary proceedings or corresponding losses of gain-time.  Only the sanction of dismissal will suffice to deter Plaintiff, and other like-minded litigants, from making false and misleading statements to this Court.  This is especially true considering Plaintiff has been confronted with his false statements throughout the litigation and, rather than admit them or cease his abusive actions, he continues to file false statements and then attempts to justify them with unsupported and implausible scenarios in order

to avoid sanctions.

Furthermore, if this Court chooses not to sanction Plaintiff, the consequences could be far reaching.  Other courts have noted that prisoner litigation has become a sort of recreational activity for those who have little to lose and everything to gain[3], *pro se* inmate litigants must be held accountable for their actions if they choose to initiate federal civil rights litigation. As noted by Magistrate Judge Elizabeth Timothy,

> If Plaintiff suffered no penalty for his untruthful responses, there would be little or no disincentive for his attempt to evade or undermine the purpose of the form. **Furthermore, if word spread around the prisons that the questions on the complaint form could be circumvented in such a manner, the court might be confronted with widespread abuse from its many prisoner litigants.** Therefore, this court should not allow Plaintiff's false responses to go unpunished.

Johnson v. Crawson, 2010 WL 1380247 (N.D. Fla. 2010), report and recommendation adopted by, 2010 WL 1380228 (N.D. Fla. 2010) (emphasis added); see also Hood v. Tompkins, 197 F. App'x 818, 819 (11th Cir. 2006) ("A district court may impose sanctions if a party knowingly files a pleading contained [sic] false contentions."); Rolle v. Crosby, 2005 WL 3087863, *2 (M.D. Fla. 2005)(dismissing case without prejudice based on the plaintiff's failure to list prior cases on complaint).

Conversely, if a prisoner's failure to abide by the requirements of the federal courts is promptly and appropriately addressed by the Court, word could spread through the prison populations that the federal courts will not tolerate a cavalier attitude even by *pro se* inmate litigants.  Holding the *pro se* inmate litigant responsible for the representations in his filings and imposing sanctions with teeth, could promote prisoner respect for the federal courts, lessen the impact on efficiency cited by Magistrate Judge Timothy,[4] through more thoughtful and truthful

---

[3] See Harris v. Garner, 216 F.3d 970, 991 (11th Cir. 2000)(citing to the Congressional Record and statements by Senators Dole and Kyl).

[4] See Johnson v. Crawson, supra, at *2; see also Cochran v. Gilo, 2010 WL 716536, at *1 (N.D.

inmate filings, and would certainly not hurt rehabilitative efforts of the Department.

The sum of all of the evidence is that Plaintiff has repeatedly misled the Court.  Rule 11(b), Federal Rules of Civil Procedure requires candor and honesty in any submission to the court.  Defendants respectfully submit that this Court should dismiss this action.

## CONCLUSION

Accordingly, based on the foregoing, Defendants **Adams** and **Carey** respectfully request for summary judgment to be granted in their favor and/or this case be dismissed as a sanction.

Respectfully submitted,

**PAMELA JO BONDI**
**ATTORNEY GENERAL**

/s/ Daniel A. Johnson
**DANIEL A. JOHNSON**
**Assistant Attorney General**
**Florida Bar No.:  0091175**
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300
Facsimile: (850) 488-4872
Dan.Johnson@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Defendants' Motion for Summary Judgment has been furnished by U.S. mail to:  **LESTER MATHIS, DC# 095096,** Union Correctional Institution, 7819 N.W. 228th Street, Raiford, Florida 32026-4000, on this 18th day of July, 2013.

/s/ Daniel A. Johnson
Daniel A. Johnson, Esq.

---

Fla. 2010) (dismissal as a sanction due to the plaintiff's dishonesty in listing prior federal cases and failure to exhaust); Jackson v. Martin, 2011 WL 833995, at *4 n.3 (N.D. Fla. 2011) (noting that dismissal would be appropriate on the grounds that failure to disclose prior litigation is considered *malicious* due to the plaintiff's abuse of judicial process).